******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GINA MICHAELS *v.* THOMAS MICHAELS
(AC 37175)

Beach, Sheldon and Harper, Js.

*Argued December 7, 2015—officially released March 22, 2016*

(Appeal from Superior Court, judicial district of New Haven, Emons, J.)

*Todd R. Bainer*, for the appellant (defendant).

*Richard W. Callahan*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this postjudgment dissolution of marriage matter, the defendant, Thomas Michaels, appeals from the trial court's finding of contempt against him and its modification of his visitation rights with his minor daughter. He claims that the court erred: (1) in denying his motion for "either recusal/disqualification, the motion for mistrial or the motion to vacate . . . [which were] all based on [the court's] alleged bias and partiality"; and (2) in modifying his visitation rights after an evidentiary hearing, of which he allegedly had no notice, on what he claims to have been a "nonexistent recent motion to modify, or on a motion that was fifteen months old . . . ."[1] We affirm the judgment of the trial court.[2]

The marriage of the defendant and the plaintiff, Gina Michaels, was dissolved on March 17, 2011. The dissolution judgment provided that the parties would share joint legal custody of the minor child, with the child's primary physical residence to be with the plaintiff, and the defendant to have the right to visitation. The dissolution judgment also provided, inter alia, that the defendant would pay child support to the plaintiff and that the parties would share several listed expenses for the minor child.

On May 13, 2013, the plaintiff filed a motion for contempt, in which she alleged that the defendant had failed to pay certain expenses for the minor child in accordance with the dissolution judgment. On April 1, 2014, the parties reached a compromise with respect to the contempt motion, under which the defendant agreed to file his 2013 tax return no later than April 15, 2014, and to pay the plaintiff the sum of $1500, upon receipt of his tax refund, as his portion of the expenses for which the plaintiff sought reimbursement in her motion for contempt. The defendant further agreed that if, through no fault of his own, he did not receive the anticipated tax refund, he would satisfy that $1500 payment obligation by making monthly payments to the plaintiff, in the amount of $100 per month, commencing on May 15, 2014. The defendant finally agreed to provide the plaintiff with a receipt or other proof that he had timely filed his tax return. The parties' agreement was made an order of the court.

Also, on May 15, 2013, the plaintiff filed a motion to open the judgment and to modify the parenting plan, alleging,[3] inter alia, that: "The inconsistency of the defendant's work schedule and the resulting constant flux of the child's parenting schedule with the defendant; the defendant's inability to comply with the existing parenting orders, whether intentional or otherwise; the age of the minor child and her need for consistency, especially during the school year; and the parties' continued inability to communicate, renders the current

parenting schedule contrary to the best interests of the minor child." In addition to a modification of the visitation schedule, the plaintiff requested, in her motion to modify, that she be vested with final decision making authority over all matters regarding the minor child. She also filed a motion requesting that a guardian ad litem be appointed to represent the best interests of the minor child.

On July 31, 2013, the parties appeared in court and entered into an agreement for a modified temporary parenting plan and the court appointed a guardian ad litem to represent the interests of the minor child. The parties agreed to report back to the court on September 25, 2013. When the parties appeared in court on September 25, 2013, they again agreed to modify the parenting schedule. They further agreed to "report back [to the court] on October 15, 2013 . . . to file a more detailed stipulation resolving all outstanding issues."[4] On February 11, 2014, the parties again appeared before the court and agreed to a modified parenting schedule.

In the spring of 2014, the marital home in Woodbridge, in which the plaintiff and the minor child had been residing, was sold and the plaintiff, along with the child, relocated to Madison.[5] On April 9, 2014, the defendant filed "Defendant Father's Memorandum re: Parenting Time (postjudgment)." In that document, the defendant represented that he "maintains an apartment in West Haven but spends most of his time at the Woodbridge residence of his girlfriend." On the basis of the plaintiff's relocation to Madison, and his residing in Woodbridge, the defendant proposed a modified parenting schedule. The defendant suggested in the proposed schedule that the parties report back to court on June 2, 2014, to meet with a family relations officer to work out the parenting schedule for the summer and the upcoming school year.

On April 15, 2014, the court, *Hon James G. Kenefick*, judge trial referee, issued orders again modifying the parenting plan in contemplation of the new Madison residence of the plaintiff and the minor child. On June 18, 2014, the parties entered into an agreement for a modified parenting schedule for the summer of 2014, and agreed to meet with family relations on August 13, 2014 to "discuss the school schedule for 2014–2015."

On June 24, 2014, the plaintiff filed a motion for contempt, alleging both that the defendant had not yet given her proof that he had filed his 2013 tax return on or before April 15, 2014, and that he had neither paid her the sum of $1500 upon receipt of his tax refund, nor made monthly $100 payments to her toward his $1500 payment obligation to satisfy that debt, pursuant to the court's order of April 1, 2014.

The court, *Emons, J.*, held a hearing on the contempt motion on August 6, 2014. After the hearing, the court

ruled that the defendant was not in contempt for failing to file his tax return by April 15, 2014, because his failure to do so had been through no fault of his own. The court ruled, however, that the defendant was in contempt for not paying the plaintiff $100 per month in compliance with the April 1, 2014 order. The court thus issued an order for payment of the unpaid balance due under its prior payment order and continued the matter to August 13, 2014, "for status update and status of [the] defendant's tax returns." When the court announced the continuance date, counsel for the plaintiff noted that the parties were already scheduled to return to court on that date to meet with a family relations officer regarding visitation.

As scheduled, the parties again appeared before the court, *Emons, J.*, on August 13, 2014. At the commencement of the hearing, the guardian ad litem apprised the court of various visitation issues that remained to be resolved. Because the family relations officer with whom the mediation of those issues was to have been conducted was unexpectedly not available at that time, the parties and the guardian ad litem agreed, with the court's approval, to reschedule their meeting with family relations to attempt to mediate the visitation issues, and to report back to the court on August 27, 2014. Because August 27, 2014, would be the first day of school for the child, the court informed counsel that if they could not reach an agreement on that date, it would adjudicate the visitation issue. As for the defendant's tax return, the court heard testimony from both parties, but it was still unclear as to whether it had yet been filed. Counsel for the plaintiff had subpoenaed the defendant's accountant, but the accountant had not appeared in court. The court thus ordered the parties to contact the accountant again, and advised them that if the accountant failed to appear on August 27, 2014, a capias would be issued for his arrest.

On August 27, 2014, the parties again appeared before the court, *Emons, J.* When the defendant's accountant did not appear, the court issued a capias for his arrest, and continued the contempt hearing to September 2, 2014. The court then proceeded with the visitation issue, which the parties had been unable to resolve with family relations. After hearing testimony from both parties and the guardian ad litem, the court informed the parties that it was ready to render its decision, but afforded them one more opportunity to come to an agreement on the outstanding issues. Because the parties were scheduled to return to court the following week, on September 2, 2014, on the contempt motion, the court announced that it would hold its decision in abeyance until that date.

On September 2, 2014, the parties appeared before the court, *Emons, J.*, as scheduled. At the commencement of the proceeding on that date, the defendant filed

a motion to recuse or disqualify the court based upon the alleged bias and partiality that it had displayed against him in prior proceedings on August 6, 13 and 27, 2014.[6] On that same alleged basis, the defendant also moved simultaneously to vacate the court's prior finding of contempt, for a new trial on the plaintiff's contempt motion, and for a mistrial.[7] The court denied those motions, then issued an order modifying the defendant's visitation schedule. This appeal followed.

I

The defendant first claims that the court erred in denying his motion for "either recusal [or] disqualification, the motion for mistrial or the motion to vacate . . . [which were] all based on [the court's] alleged bias and partiality." The plaintiff argues that the record is inadequate to review these claims. We agree with the plaintiff.

"The duty to provide this court with a record adequate for review rests with the appellant. . . . It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. Practice Book § [60–5] . . . . It is not the function of this court to find facts. . . . Our role is . . . to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Macricostas* v. *Kovacs*, 67 Conn. App. 130, 133, 787 A.2d 64 (2001).

The plaintiff claims that the record is inadequate for review because the defendant failed to comply with Practice Book § 64-1. "[P]ursuant to Practice Book § 64-1 (a), the court [is] required to state, either orally or in writing, a decision that encompassed its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . . If an oral decision is rendered, a signed transcript of the oral decision should be created and filed for use in any appeal. If the court fails to file an oral or written decision, the appellant, who has the duty to provide an adequate record for appellate review; see Practice Book § 61-10; must file a notice to that effect with the appellate clerk in accordance with Practice Book § 64-1 (b)." (Internal quotation marks omitted.) *Gordon* v. *Gordon*, 148 Conn. App. 59, 66–67, 84 A.3d 923 (2014).

In the present case, the court did not file a written memorandum of decision explaining its ruling, nor did it prepare and sign a transcript of an oral ruling. See Practice Book § 64-1 (a) (6). The defendant did not file a notice pursuant to Practice Book § 64-1 (b) with the appellate clerk's office, nor did he file a motion asking the court to articulate the factual and legal basis for its ruling. See Practice Book § 66-5.

"On occasion, we have overlooked an appellant's failure to ensure that the trial court sign a transcript of an oral decision provided that the appellant had filed an unsigned transcript and we [were] able to identify readily the court's decision, *encompassing its findings* . . . ." (Emphasis in original; internal quotation marks omitted.) *Gordon* v. *Gordon*, supra, 148 Conn. App. 67. Although the record before us includes the trial transcript, we cannot readily identify any portion of the transcript that encompasses the court's factual findings with respect to the defendant's claims that the trial court was biased and partial. See *Murcia* v. *Geyer*, 151 Conn. App. 227, 230–31, 93 A.3d 1189, cert. denied, 314 Conn. 917, 100 A.3d 406 (2014). Because the transcripts do not provide the trial court's factual or legal bases for denying the defendant's motions, the record is inadequate to review his claims of error.[8]

## II

The defendant also claims that the court erred in modifying his visitation rights. He claims that there was no "viable" motion for modification pending, and thus that he was denied proper notice that visitation was going to be modified. The defendant did not raise this objection before the trial court,[9] and thus is raising it for the first time on appeal. The defendant does not seek review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), nor does he state any extraordinary basis for reviewing this unpreserved claim. The claim is therefore not properly before us.

Moreover, the defendant's claim that he did not have notice that modification of visitation was pending is belied by the record. Indeed, the record contains substantial evidence of the defendant's knowledge that his visitation was going to be modified. In addition to the numerous times that scheduled proceedings on the visitation issues had been continued on the record in open court, the defendant demonstrated his knowledge of the ongoing visitation issues in writing in the pleadings he filed with the court. Most notably, in his September 2, 2014 motion for mistrial, the defendant stated that the August 27, 2014 hearing "was to be a simple hearing on school year scheduling of the minor child . . . ." In his motion for mistrial, he objected to the fact that the August 27, 2014 hearing had been "a full-blown trial to change custody—i.e., by final decision-making to [the] plaintiff, with no advance notice to [the] defendant, denying him his due process rights." During the September 2, 2014 hearing, counsel for the defendant repeatedly stated that the only issue relating to the minor child that was properly before the court on that day concerned the defendant's visitation schedule during the school year. Other custody related issues raised by the plaintiff on that date were thus continued to a later date at the request of the defendant for the very reason that he was unaware that they were outstanding

and was thus unprepared to go forward on them at that time. Moreover, although the plaintiff's motion to modify visitation had been filed several months earlier, and had resulted in some changes to visitation, the resolution of that motion had not yet been finalized. The parties had been meeting with family relations in an attempt to resolve their ongoing dispute by way of mediation, which ultimately failed, leading to the necessity of the court's intervention and adjudication. At oral argument before this court, the defendant argued that when the mediation with family relations failed, he was entitled to be presented with a new motion to modify. That argument is unsupported by the law. The record reflects that the defendant was well aware of the plaintiff's position as to the visitation and his claim to the contrary is unfounded.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant filed this appeal on September 10, 2014, noting that he was appealing from the following: "Denial of motion for mistrial; denial of motion to disqualify/recuse; denial of motion to vacate." All of those motions relate either directly or indirectly to either or both the finding of contempt and the modification of the defendant's visitation, which are the substantive rulings of the trial court with which the defendant takes issue in his brief to this court. Although all of these motions were filed prior to the court's modification of the defendant's visitation with his daughter, we will assume for purposes of this opinion that he has challenged the court's substantive rulings.

[2] The defendant also claims: "In what may be a case of first impression, where the trier has basically concluded that a party pro se witness [defendant, here] in a family matter, albeit incorrectly, has committed perjury, [the court has] a duty to advise him of his fifth amendment rights, stop the proceedings immediately and provide him with the opportunity to obtain counsel." Because the defendant did not raise this claim before the trial court, it is unpreserved and thus unreviewable. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[3] We note that the parties' postjudgment parenting issues arose almost immediately following the entry of judgment, with numerous motions being filed by both parties. The recitation of the procedural history contained herein is not exhaustive and is limited to the history that is relevant to the defendant's claims on appeal.

[4] The record does not reflect that the parties in fact reported back to the court on October 15, 2013.

[5] The dissolution judgment provided, inter alia, that the defendant would quitclaim his right, title and interest in the marital home located in Woodbridge to the plaintiff and the plaintiff would be responsible for paying the first and second mortgages on the property and shall hold the defendant harmless therefrom. The judgment also provided that the plaintiff would refinance the mortgages on that property within one year of the date of the judgment and, if she was unable to do so, the property would be listed for sale. On July 28, 2011, the defendant filed a motion for contempt alleging that the plaintiff had failed to pay the mortgages on the former marital home. After several additional court appearances on this issue, the property ultimately sold in the spring of 2014.

[6] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." The defendant's motion to disqualify was not accompanied by the requisite affidavit or certificate of good faith, nor was it filed ten days prior to the date of the hearing.

[7] The defendant also filed on September 2, 2014, a motion for referral to family relations for a study regarding the issue of final decision making,

which the court, *Emons*, *J.*, granted.

[8] In support of the defendant's allegations that the trial court demonstrated bias and partiality, he argues, inter alia, in his brief to this court: "Her courtroom was as if there were no rules and it was a courtroom from the wild, wild west of 150 years ago, where 'rough' justice was administered." Such a comment is as unfounded as it is unhelpful.

[9] At the August 27, 2014 hearing, the defendant did not object to the court addressing the visitation issue with the minor child. The only objection he raised was as to a change in the terms of the joint custody—the proposal by the plaintiff that she be granted final decision making authority with respect to the child—because he thought they were there that day to resolve the visitation schedule for the upcoming school year. The court noted, "We may be dealing with decision making." The hearing continued. The defendant again objected to the scope of the hearing when counsel for the plaintiff attempted to elicit testimony from the plaintiff regarding a modification to future summer schedules. He reiterated his understanding that the hearing on that date was for the upcoming school year. The defendant participated fully in the hearing, testifying as to his own proposal for a visitation schedule for the upcoming school year. At no time did he object to the proceedings regarding the schedule for the upcoming school year.

_____